# LOUISVILLE *v.* BANK OF LOUISVILLE.

## STONE, Auditor, *v.* SAME.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KENTUCKY.

Nos. 359, 358.    Argued February 28, March 2, 1899. — Decided May 15, 1899.

*Stone* v. *Bank of Commerce*, 174 U. S. 412, affirmed and applied to the point that the agreement of the commissioners of the sinking fund of Louisville and the attorney of the city with certain banks, trust companies, etc., including the Bank of Louisville, that the rights of those institutions should abide the result of test suits to be brought, was *dehors* the power of the commissioners of the sinking fund and the city attorney, and that the decree in the test suit in question did not constitute *res judicata* as to those not actually parties to the record.

*Citizens' Savings Bank of Owensboro* v. *Owensboro*, 173 U. S. 636, also affirmed and applied.

On questions of exemption from taxation or limitations on the taxing power, asserted to arise from statutory contracts, doubts arising must be resolved against the claim of exemption.

THE Bank of Louisville in these two cases filed its bills to enjoin the collection of certain taxes. The matters ·to which the bill in the first case (No. 359) related were certain franchise taxes for the years 1893 and 1894, the assessment and certification of valuation whereof had been made prior to the filing of the bill. Those covered by the bill in the second case (No. 358) were, generally speaking, like those embraced in the preceding suit, but were for different years — that is, for 1895, 1896 and 1897, and by an amendment the taxes of 1898 were also included. These taxes, however, had not been certified at the time the bill was filed, and the relief contemplated was the enjoining of the valuation of the franchise and the certification of the same for the purposes of taxation, as well as the subsequent collection of the taxes to be levied thereon. Omitting reference to the averments distinctly relating to the jurisdiction in equity, the case made by the bills was this:

It was alleged that the bank was chartered on February 2, 1833, to endure until January 1, 1853 ; that pursuant to an act approved February 16, 1838, the provisions of which had been complied with, the charter existence was extended for nine years ; that by an act of February 15, 1858, duly accepted by the bank, its charter privileges were continued in full force for twenty years from the 1st of January, 1863 ; and finally that by an act of May 1, 1880, which the bank had duly accepted, its charter was extended for twenty years from January 1, 1883. It was alleged that by the sixth section of the original charter it was provided, among other things, that the cashier of the bank "shall on the first day of July, 1834, and on the same day annually thereafter, pay unto the treasurer of the State twenty-five cents on each share held by the stockholders in said bank, which shall be in full of all tax or bonus on said bank; provided, that the legislature may increase or reduce the same; but at no time shall the tax imposed on said stock exceed fifty cents on each share held in said bank." The tax, the bills admitted, by an act approved February 12, 1836, had been increased to fifty cents a share.

In general language, it was averred that by certain decisions rendered by the courts of Kentucky in the years 1838, 1869 and 1888, it was held that similar language to that contained in the charter of complainant constituted a contract preventing a higher rate of taxation than that provided for in the charter, and that from all or some of these decisions it resulted that the extension of an original charter, under the law of Kentucky, carried with it all the rights and privileges, including the limit of taxation, contained in the original charter. No decision, however, prior to 1880, by the Kentucky Court of Appeals, was referred to, holding that the mere grant of a charter, or an extension thereof, was not subject to repeal, alteration or amendment, if such power was reserved, by a general law, in force when the charter was enacted or the extension was granted. There was no averment that the complainant was either a party or a privy to the suits in which the decisions referred to had been rendered.

In both bills it was averred at length that the general assembly of the State of Kentucky had enacted the statute known as the Hewitt Act, and that the bank had accepted its provisions. This act and its acceptance, it was asserted, constituted an irrevocable contract, protected from impairment by the Constitution of the United States, thus securing the bank against any form of taxation other than that provided in the Hewitt Act. It was in both bills then declared that in 1894 the city of Louisville, asserting a right to collect taxes from the bank, in violation of the contract embodied in the Hewitt Act, for the purpose of testing the right of the city to do so, an agreement was entered into between the commissioners of the sinking fund, the city of Louisville through the city attorney, and the attorneys of the complainant and of other banks and trust companies, by which representative suits were to be brought, and it was agreed that the liability of the complainant to any other taxation than that imposed by the Hewitt Act should abide the result of the test suits in question; that in compliance with this agreement a suit was brought by the Bank of Kentucky, which like the complainant had been originally chartered before 1856, in which last-

named year an act had been passed in Kentucky reserving the right to repeal, alter or amend all charters subsequently granted, subject to certain exceptions provided expressly in the act of 1856, and that this suit had culminated in a final decree by the Court of Appeals of Kentucky holding that the Hewitt Act was an irrevocable contract, and that the banks which had accepted it were not liable to any other taxation than that therein specified. Averring that the suit brought by the Bank of Kentucky was the test suit contemplated by the agreement, as determining the liability of the complainant to other taxation than that imposed by the Hewitt Act, the decree in the suit of the Bank of Kentucky was pleaded as *res judicata*. In addition, the bills asserted that if the Hewitt Act was held by this court not to constitute an irrevocable contract, then the complainant was entitled to be restored to its rights under its charter as extended, and was consequently not subject to the particular taxes, the assessing and collection of which it was the object of the bills to prevent.

The court below held that the complainant, by virtue of the agreement referred to, was a privy to the decree rendered by the Court of Appeals of the State of Kentucky in favor of the Bank of Kentucky in the test case in question, and hence decided that the plea of *res judicata* was well taken. From its decrees enforcing these conclusions the appeals in both these cases were taken.

*Mr. Henry L. Stone* for Louisville.

*Mr. Alexander Pope Humphrey, Mr. Frank Chinn, Mr. James P. Helm* and *Mr. John W. Rodman* for the bank.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

The unsoundness of the plea of the thing adjudged, upon which the lower court rested its decision, results from the opinion announced in *Stone* v. *Bank of Commerce, ante,* 412, and *Louisville* v. *Same, ante,* 428. It was there held that the

agreement of the commissioners of the sinking fund of the city of Louisville and the attorney of the city with certain banks, trust companies, etc., including the complainant bank, that the rights of those institutions should abide the result of test suits to be brought, was *dehors* the power of the commissioners of the sinking fund and the city attorney, and therefore that the decree in the test suit in question did not constitute *res judicata* as to those not actually parties to the record.

The want of foundation for the assertion that the Hewitt Act created an irrevocable contract between the complainants and the city is also disposed of by the decision in *Citizens' Savings Bank of Owensboro* v. *Owensboro.* There is no ground for distinguishing this case from the one last referred to. True it is that the original charter of the complainant differs somewhat from the charter of the Citizens' Savings Bank of Owensboro, inasmuch as the charter of the Citizens' Savings Bank contained simply a limitation of taxation to a fixed rate, whilst the charter now in question, although establishing a stated rate, provided that the named rate might be reduced or increased, but *should not be increased beyond a maximum sum.* This limit as to the power to increase, it has been argued, took the case out of the reach of the act of 1856, since it was a plain expression of the legislative intent that there should be no increase beyond the maximum stated.

At the time the charter was extended, in 1880, the act of 1836 had increased the limit of taxation, fixed by the original charter, to the maximum therein allowed of fifty cents on each share. Conceding, *arguendo*, that the charter, as thus extended, carried with it, into the new period, the limitation of taxation fixed by virtue of the original charter and by the act of 1836 increasing the sum to fifty cents on each share, nevertheless the case is covered by the decision in the Citizens' Savings Bank of Owensboro, *supra.* There is nothing in the extending act expressing the plain intent of the legislature that the charter as extended should not be subject to the repealing power reserved by the act of 1856. The act of

extension, therefore, was not taken out of the general rule arising from the act of 1856, that is to say, it was not embraced in the exception mentioned in that act, saving from the power to repeal, alter or amend "all charters and grants of or to corporations or amendments thereof" when "the contrary intent be therein plainly expressed." No such intent being plainly expressed in the extending act, it follows that the charter as extended was subject to repeal. It is impossible, in consonance with reason, to conceive of an unlimited irrepealable contract right when there is no unlimited irrepealable contract from which the right can be derived. And yet to such conclusion does the reasoning necessarily conduce which asserts that a repealable charter gave rise to an irrepealable contract right. Granting that the extending act in substance amounted to a reënactment in so many words of the provision found in the original charter, such provision as reënacted became but a part of a whole contract which was subject to repeal. The right to repeal, embracing the whole, covered also necessarily the provisions found in the whole. The limitation of taxation in the original charter was during the life of the corporation. If carried forward by the amendment it was only for the new period, that is, during the extended charter. But for all this extended period the charter was subject to repeal, at the will of the legislature, and the power to terminate the charter involved the correlative right of ending those stipulations which were only to last during the charter. The argument that, although the power to repeal the charter was reserved, the power to alter the taxation, without repealing the charter, did not arise, is but a form of stating the proposition which we have already noticed, and which amounts to the assertion that the lesser is not contained in the greater power. We must construe the extending act as a whole, especially in view of the origin and implied import of acts reserving the power to repeal, alter or amend, as fully stated in *Citizens' Savings Bank of Owensboro* v. *Owensboro.* We think that the extending act was subject to the reserved power of repeal, free from limitations inconsistent with the exercise of the right. The elementary general rule is that on

questions of exemption from taxation or limitations on the taxing power, asserted to arise from statutory contracts, doubts arising must be resolved against the claim of exemption. We cannot imply from the mere presence in the extended charter of the limitation of taxation, found in the original charter, a restraint on the power to repeal, alter or amend, when such restraint does not flow from the provisions of the extending act taken as a whole. It results from the fact that the extended charter was subject to repeal, that the complainant had no irrevocable contract limiting the power of the State to tax. Having no such right, it, of course, cannot assert that it must, if the Hewitt Act was not an irrepealable contract, be restored to the contract rights existing at the date of the enactment of the Hewitt Act. The non-existence of the prior right precludes the thought that a restoration could be possible.

From the foregoing reasons it follows that the decrees below rendered were erroneous, and they must be and are

*Reversed, and the cases remanded with directions to dismiss the bills, and it is so ordered.*

MR. JUSTICE HARLAN dissented on the ground that there was privity, and therefore *res judicata.*